**Tom BOLACK and Thomas Morgan,**
**Appellants (Defendants),**

v.

**CHEVRON, U.S.A. INC.,**
**Appellee (Plaintiff).**

No. 97–58.

Supreme Court of Wyoming.

Aug. 17, 1998.

Rehearing Denied Sept. 17, 1998.

238

Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, for Appellant Tom Bolack.

Peter K. Michael and William M. McKellar of Boley & McKellar, P.C., Cheyenne, and H. Paul Cohen and Thomas W. Niebrugge of Weinman, Cohen & Niebrugge, P.C., Denver, for Appellant Thomas Morgan.

Morris R. Massey and Thomas F. Reese of Brown, Drew, Massey & Sullivan, Casper, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice.

Chevron, U.S.A. Inc. (Chevron) filed an action in the United States District Court for the District of Wyoming seeking payment from non-operating interest owners, Thomas Morgan (Morgan) and Tom Bolack (Bolack), under a Unit Operating Agreement. The amounts for which Chevron claimed arose from payments Chevron tendered in the settlement of four personal injury suits. Bolack

* Chief Justice at time of oral argument.

and Morgan refused to pay, claiming that Chevron's demand was barred by Wyoming's anti-indemnity statute, Wyo. Stat. § 30–1–131 (1997). Pursuant to Wyo. Stat. §§ 1–13–104 through 1–13–107 (1997) and W.R.A.P. 11, the United States District Court for the District of Wyoming presented the following certified question for review:

> Whether the Unit Operating Agreement for the Painter Reservoir Unit is rendered void and unenforceable by application of W.S. §§ 30–1–131, et. seq., to the extent that it requires non-negligent non-operators to contribute proportionately to the operator's settlements of claims for personal injuries to a well servicing contractor's employees where the operator's negligence caused or contributed to the cause of the personal injuries.

We answer in the affirmative.

## I. FACTS

Chevron was the Unit Operator of the Painter Reservoir Unit Area in Uinta County, Wyoming in January 1993. At that time, Chevron owned a 75.42% working interest in the participating area, Bolack was a 7.99% non-operating working interest owner, and Morgan owned an 11.99% non-operating working interest. The interests of Chevron, Bolack and Morgan were subject to the Unit Operating Agreement executed by the parties.

As the Unit Operator, subject to limitations provided for in the Unit Operating Agreement, Chevron had the sole power to manage and conduct all operations in the unit. Morgan and Bolack, as non-operators under the Unit Operating Agreement, had no right to manage, control or supervise operations.

In January 1993, Chevron contracted with Cannon Well Service to perform a recompletion operation on one of the wells in the unit for the purpose of establishing production from the Twin Creek formation. Bolack and Morgan elected to join and share the costs of recompleting the well. On January 29, 1993, during the course of that reworking operation, the well caught fire and four employees from Cannon Well Service suffered burns.

It is uncontested that Morgan and Bolack were not in any way involved in the acts or omissions which caused the injury to the four Cannon Well Service employees, and no one asserts that Morgan and Bolack were negligent.

Subsequently, all four employees filed personal injury lawsuits against Chevron in Uinta County. Those lawsuits were set for trial in February 1995. After extensive discovery, all of the claims were settled by Chevron before trial without the approval of Bolack and Morgan. Chevron elected to pay 2.61 million dollars of the settlement amount with its own funds.

In May, 1995, Chevron mailed billing invoices to Bolack and Morgan for their asserted percentage share of the 2.61 million dollars, plus attorneys fees paid to outside counsel. The Unit Operating Agreement provisions relied upon by Chevron in its demand are as follows:

> 1.4 **"Costs"** means all costs and expenses incurred in the development and operation of the Unit Area pursuant to this agreement or the Unit Agreement and all other expenses that are herein made chargeable as Costs, determined in accordance with the accounting procedure set forth in Exhibit 2 attached hereto, which shall govern in all matters covered thereby, except that in event of inconsistency between said accounting procedure and this agreement, this agreement shall control.

> * * *

> 16.5 **Uninsured Losses.** Any and all payments made by Unit Operator in the settlement or discharge of any liability to third persons (whether or not reduced to judgment) arising out of an operation conducted hereunder and not covered by insurance herein provided to be maintained by Unit Operator shall be charged as Costs and borne by the Party or Parties for whose account such operation was conducted.

Exhibits 2 and 5 as attached to the Unit Operating Agreement state:

## II. DIRECT CHARGES

Operator shall charge the Joint Account with the following items:

\* \* \*

### 9. Legal Expense

Expense of handling, investigating and settling litigation or claims, discharging of liens, payment of judgments and amounts paid for settlement of claims incurred in or resulting from operations under the agreement or necessary to protect or recover the Joint Property, except that no charge for services of Operator's legal staff or fees or expense of outside attorneys shall be made unless previously agreed to by the Parties.

### INSURANCE

\* \* \*

Except as otherwise provided in Section 16.2, Operator shall not carry any other insurance for the joint account. The liability, if any, of the parties hereto in damages for claims growing out of personal injury to or death of third persons or injury or destruction of property of third parties resulting from the operation and development of the premises covered hereby shall be borne by the parties hereto in the proportions of their respective interests in the production therefrom; and each party individually may acquire such insurance as it deems proper to protect itself against such claims. .

When Bolack and Morgan refused to pay any part of the invoices, Chevron filed this suit in the United States District Court for the District of Wyoming. Finding that there is a question of Wyoming law which may be determinative of the claim for relief asserted by Chevron, and finding no controlling precedent in Wyoming case law, the United States District Court certified the present question to this court pursuant to Wyo. Stat. §§ 1–13–104 through 1–13–107 and W.R.A.P. 11.

## II. STANDARD OF REVIEW

 The certified question requires interpretation of Wyo. Stat. §§ 30–1–131 and 30–1–132 (1997) [1] to determine whether these provisions apply to the Unit Operating Agreement. Statutory interpretation begins by looking at the plain and ordinary meaning of the words contained therein to determine

1. Wyo. Stat. § 30–1–131 provides as follows:

(a) *All agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages* for:
(i) Death or bodily injury to persons;
(ii) Injury to property; or
(iii) Any other loss, damage, or expense arising under either (i) or (ii) *from:*
(A) *The sole or concurrent negligence of the indemnitee* or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or
(B) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, are *against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence.* This provision shall not affect the validity of any insurance contract or any benefit conferred by the Worker's Compensation Law [§§ 27–14–101 to 27–14–805] of this state.

(Emphasis added.) The above provisions are applied to agreements "pertaining to any well for oil, gas, or water" as that phrase is defined in Wyo. Stat. § 30–1–132:

The term "agreement pertaining to any well for oil, gas, or water, or mine for any mineral" as used in section 1 hereof [§ 30–1–131], means *any agreement or understanding*, written or oral, *concerning any operations related to* drilling, deepening, *reworking*, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, *or otherwise rendering services in or in connection with any well* drilled for the purpose of producing or disposing of oil, gas or other minerals, or water, and designing, excavating, constructing, improving, or otherwise rendering services in or in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, *or an agreement to perform any portion of any such work or services or any act collateral thereto,* including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation. (Emphasis added.)

whether a statute is ambiguous. *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1042–43 (Wyo. 1993).

> A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." * * * "[A] statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." * * * "[W]hether an ambiguity exists in a statute is a matter of law to be determined by the court."

*Id.* at 1043 (*quoting Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214, 219–20 (Wyo.1991)). If we find the statute is unambiguous, we apply its plain meaning. *Parker Land and Cattle Co.,* 845 P.2d at 1043.

We read a statute so that every word, clause and sentence is given effect so, if possible, no part of the statute is rendered inoperative or superfluous. *State Dept. of Revenue and Taxation v. Pacificorp.,* 872 P.2d 1163, 1166 (Wyo.1994); *Reliance Ins. Co. v. Chevron U.S.A. Inc.,* 713 P.2d 766, 770 (Wyo.1986). In construing the statute, our main objective is to effectuate the intent of the legislature. *Moncrief v. Harvey,* 816 P.2d 97, 105 (Wyo.1991).

## III. DISCUSSION

Bolack and Morgan assert that Wyo. Stat. §§ 30–1–131 and 30–1–132 render the provisions of the Unit Operating Agreement unenforceable to the extent that Chevron seeks indemnity for its own negligence. Chevron denies that these statutory provisions apply to the Unit Operating Agreement for several reasons.

First, Chevron contends that the Unit Operating Agreement does not fall within the purview of Wyo. Stat. § 30–1–132 because it is not a contract for services. Relying on our holding in *Reliance Ins. Co.,* 713 P.2d 766, Chevron maintains that the Unit Operating Agreement does not require Bolack or Morgan to perform services relating to the well, and, therefore, the Unit Operating Agreement is not an agreement governed by the anti-indemnity prohibitions. Although Chev-

ron recognizes that our decision in *Reliance Ins. Co.* did not turn on whether services were being performed, Chevron asserts that the decision clearly determined "that an agreement which is voidable under § 30–1–131 must be one *relating to the rendition of services * * * by the party from whom indemnity is sought.*" (Emphasis added.) Interestingly, Chevron does not point to where that requirement is found in our decision, and we have searched in vain for such implication. Rather, we find that our discussion in *Reliance Ins. Co.* was limited to "rendering services" simply because that was the term in the statute relevant to the facts of that case.

Wyo. Stat. § 30–1–132 defines the agreements to which Wyo. Stat. § 30–1–131 will apply. The plain language of the statute states that "any agreement * * * concerning any operations related to [listing of specific activities], or otherwise rendering services in or in connection with any well * * * " are subject to the anti-indemnity provision. Wyo. Stat. § 30–1–132. We find no language which limits the application of Wyo. Stat. § 30–1–131 only to agreements where the "party from whom indemnity is sought" will provide services.

In this case, the Unit Operating Agreement clearly contemplates that Chevron will perform operations relating to a well. In *Reliance Ins. Co.,* we noted that "[t]he catch-all phrase, 'rendering services * * * in connection with any well,' follows a list of specific activities which are closely related to well drilling." *Reliance Ins. Co.,* 713 P.2d at 770. It is precisely these listed operations which Chevron agreed to perform under the Unit Operating Agreement and from which its liability arose. Consequently, we see no basis for Chevron's contention that the Unit Operating Agreement is not an agreement within the definition of Wyo. Stat. § 30–1–132.

Chevron next argues that the Unit Operating Agreement is not governed by Wyo. Stat. § 30–1–131 because its provisions do not "by its terms, purport to indemnify Chevron against anything" for its own negligence. Chevron avers that its claim is not one for indemnity, but for the enforcement of

a contract to pay costs of a well completion operation. To support this position, Chevron cites to *Centric Corp. v. Drake Bldg. Corp.*, 726 P.2d 1047 (Wyo.1986).

Chevron's reliance on our holding in *Centric Corp.*, however, is misplaced. In *Centric Corp.*, we did not reach the anti-indemnity issue because we found that the contract on which Centric claimed "is not one which indemnifies Centric against the consequences of its own negligence." *Id.* at 1053–54. Here, Chevron boldly claims that it is "entitled to recover on its contract claims, even though it is an accepted fact that its own negligence caused or contributed to the injuries of the well servicing contractor's employees." This statement unabashedly expresses Chevron's intent to enforce the Unit Operating Agreement to recover its losses stemming from its own negligence. The fact that the terms of the contract do not mention indemnity is not dispositive. Merely because words such as "negligence" or "indemnity" are absent does not change the result that Chevron demands. Indeed, no case could teach more clearly that such precise terms will not avoid a claim that a party is obligated to protect against injuries resulting from the other party's negligence based upon general contractual language.

Wyo. Stat. § 30–1–131 precludes the enforcement of contracts which "purport to indemnify" an indemnitee against the consequences of its own negligence *"to the extent"* that the terms relieve the indemnitee from loss or liability for his own negligence. While the contractual provisions at issue may be enforceable under other circumstances, in this instance they are being used to enforce the Unit Operating Agreement in a manner which patently violates Wyo. Stat. § 30–1–131. Thus, to the extent that Chevron seeks to charge the non-negligent interest owners

its "costs" to compensate workers who were seriously injured by Chevron's negligence, Chevron's claim must fail.

To otherwise hold would ignore the strong public policy which supports the anti-indemnity statute. We have long recognized that the primary purpose of the anti-indemnity provision is to promote safe working conditions for Wyoming's workers. In pursuing this purpose, the anti-indemnity provisions are designed to " 'insure a continuing motivation for persons responsible * * * to take accident prevention measures * * *.' " *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, 1356 (Wyo.1978) (*quoting Davis v. Commonwealth Edison Co.*, 61 Ill.2d 494, 336 N.E.2d 881 (1975)). Were we to condone Chevron's attempt to recover for losses brought about by its own negligence, we would thwart the purpose of the anti-indemnity provision. Thus, recognition of the legislature's purpose in enacting Wyo. Stat. § 30–1–131 compels our restriction on Chevron's use of the Unit Operating Agreement.

## IV. CONCLUSION

The Unit Operating Agreement for the Painter Reservoir Unit is rendered void and unenforceable by application of Wyo. Stat. §§ 30–1–131, *et. seq.*, to the extent that it requires non-negligent non-operators to contribute proportionately to the operator's settlement of claims for personal injuries where the operator's negligence caused or contributed to the cause of personal injuries.