F I L E D
United States Court of Appeals
Tenth Circuit

DEC 17 2002

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

R & G ELECTRIC, INC., a Wyoming
corporation,

      Plaintiff - Appellant,

    v.

DEVON ENERGY CORPORATION, an
Oklahoma corporation,

      Defendant - Appellee.

No. 01-8089
(D. Ct. No. 00-CV-1043-D)
(D. Wyo.)

**ORDER AND JUDGMENT***

Before **TACHA**, Chief Judge, **ANDERSON**, and **EBEL**, Circuit Judges.

This case concerns an indemnity provision in a services contract entered into by

Plaintiff-Appellant R&G Electric, Inc. ("R&G") and Defendant-Appellee Devon Energy

Corporation ("Devon"). R&G filed this declaratory judgment action in the United States

District Court for the District of Wyoming, seeking a construction of the indemnity

provision. In granting Devon's motion for summary judgment, the district court

concluded that Oklahoma law governed the enforceability of the indemnity provision.

---

*This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

R&G appeals from the district court's conclusion regarding the applicable law. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

### A. The Parties and the Master Service Agreement

Devon is an Oklahoma corporation in the business of producing oil and gas. Devon operates more than 200 methane gas wells in the "Spotted Horse" field near Gillette, Wyoming. R&G, a Wyoming corporation, provides electrical service and maintenance to oil and gas producers in Campbell County, Wyoming.

On April 14, 2002, R&G and Devon entered into a Master Service Agreement. Under the terms of the agreement, Devon hired R&G as an independent contractor to perform electrical installation work, maintenance, and troubleshooting services in the Spotted Horse field.

Two provisions of the Master Service Agreement are relevant in this case. Paragraph 7.2 of the Master Service Agreement provided as follows:

> Contractor agrees to protect, defend, indemnify, and hold harmless operator, its officers, directors, employees or their invitees, and any customer for whom operator is performing services, from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of operator, any theory of strict liability and defect of premises, or the unseaworthiness of any vessel (whether or not preexisting the date of this contract), arising in connection herewith in favor of contractor's employees, contractor's subcontractors or their employees, or contractor's invitees on account of bodily injury, death, or damage to property.

Master Service Agreement, ¶ 7.2. The Master Service Agreement also contained a choice of law provision wherein the parties agreed that "[t]his Contract shall be governed, construed and interpreted in accordance with the laws of Oklahoma." *Id.* at ¶ 10.3.

*B. The Accident*

The Master Service Agreement required that R&G lay electrical lines running from Devon's coalbed methane gas wells to Central Distribution Points ("CDPs"). Each CDP receives methane gas from several wells through four-inch gathering lines. The CDPs serve two functions: (1) they serve as an initial collection point and meter the gas flow from the various wells for purposes of calculating royalties; and (2) they separate excess water from the gas before Devon transfers "custody" of the gas, forwarding it to the Thunder Creek Pipeline. The CDP at issue in this case, Wolff CDP 12-6, serviced between ten and twelve separate gas wells at any given time. The nearest well was approximately 600 feet from the CDP; the farthest was approximately one mile away.

On June 5, 2000, Devon contacted Rick Neether, an R&G electrician, and requested that he repair a malfunctioning pump in the Wolff CDP 12-6. At the time, Devon knew that the Wolff CDP 12-6 was operating without methane gas detectors. While Neether and his apprentice, Courtney Hall, were working on the pump, an explosion occurred inside the CDP, seriously injuring both men.

Hall filed a complaint against Devon, asserting that his injuries were caused by Devon's negligence. Devon in turn demanded that R&G defend, indemnify, and hold

Devon harmless, pursuant to the terms of the Master Service Agreement. R&G then filed this declaratory judgment action, seeking, *inter alia*, a declaration that the Master Service Agreement's indemnity clause contained in Paragraph 7.2 violated section 30-1-131 of the Wyoming Statutes Annotated, an anti-indemnity statute.

The parties stipulated that there was no dispute as to material facts and submitted cross motions for summary judgment. The district court concluded that the services R&G performed under the Master Service Agreement were outside the scope of the Wyoming anti-indemnity statute and that application of Oklahoma law did not, therefore, offend Wyoming choice of law rules. Accordingly, it held that Oklahoma law applied to the parties' dispute pursuant to the choice of law provision contained in Paragraph 10.3 of the Master Service Agreement. This appeal followed.

## II. DISCUSSION

### A. Standards of Review

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Simms*, 165 F.3d at 1326. In applying this standard, we view the record in the light most favorable to the nonmoving party. *Simms*, 165 F.3d at 1326. We review de novo the district court's

construction of unambiguous contract language, *Nunn v. Chem. Waste Mgmt., Inc.*, 856 F.2d 1464, 1467 (10th Cir. 1988), and the district court's choice of law determination, *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 608 (10th Cir. 1998).

B. *Choice of Law*

In diversity cases, we must apply the substantive law of the forum state, including its choice of law rules. *New York Life Ins. Co. v. K N Energy, Inc*., 80 F.3d 405, 409 (10th Cir. 1996). Wyoming, the forum state in this case, follows the Second Restatement approach in resolving choice of law questions. *Res. Tech. Corp. v. Fisher Scientific Co*., 924 P.2d 972, 975 (Wyo. 1996). Under Wyoming choice of law rules, the law of the state chosen by the parties to govern their contract presumptively applies. *Id.*; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187. If, however, the parties select foreign law contrary to the law, public policy, or the general interests of Wyoming's citizens, Wyoming courts will not enforce the parties' choice of law provision. *Smithco Eng'g, Inc. v. Int'l Fabricators, Inc.*, 775 P.2d 1011, 1018 (Wyo. 1989).

In this case, the Master Service Agreement provided that "[t]his Contract shall be governed, construed and interpreted in accordance with the laws of Oklahoma." Master Service Agreement, ¶ 10.3. Oklahoma does not have an anti-indemnity clause statute that applies to contracts relating to gas-well activities. Wyoming does. Thus, R&G argues

that application of Oklahoma law[1] would be contrary to Wyoming law and public policy (and thus contrary to Wyoming choice of law rules) as expressed in Wyoming's anti-indemnity statute, Wyo. Stat. Ann. § 30-1-131, because the indemnification sought by Devon falls within section 30-1-131's indemnity-clause prohibition.

Thus, in order to consider R&G's contention, we must first consider whether the indemnification sought by Devon falls within the Wyoming anti-indemnity statute. Accordingly, we proceed to determine whether the Master Service Agreement's indemnity provision and the indemnification sought by Devon offend Wyoming law or public policy.

C.      *Applicability of Wyoming Statutes §§ 30-1-131 and 132*

Wyoming proscribes some indemnity clauses where (1) the contract "pertain[s] to any well for oil, gas, or water," and (2) the indemnity clause "purports to relieve the indemnitee from loss or liability for his own negligence." WYO. STAT. ANN. § 30-1-131.[2]

---

[1] R&G's argument presumes that the Master Service Agreement's indemnity provision would be enforceable under Oklahoma law. Oklahoma law enforces indemnity provisions like the one in this case, provided that the exculpatory language is unambiguous, results from arms-length bargaining between parties, and does not violate public policy. *Kinkead v. Western Atlas Int'l, Inc.*, 894 P.2d 1123, 1127 (Okla. Ct. App. 1993). Thus, we assume without deciding that the Master Service Agreement's indemnity provision would in fact be enforceable under Oklahoma law.

[2] In relevant part, section 30-1-31 provides:

(a) All agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages for:

Wyoming does not, however, prohibit all such indemnity clauses. Rather, the Wyoming legislature limited section 30-1-131's applicability to agreements involving certain activities:

> The term "agreement pertaining to any well for oil, gas, or water, or mine for any mineral" as used in [section 30-1-131], means any agreement or understanding, written or oral, concerning any operations related to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, *or otherwise rendering services in or in connection with any well* drilled for the purpose of producing or disposing of oil, gas or other minerals, or water . . . .

WYO. STAT. ANN. § 30-1-132 (emphasis added). Wyoming courts have construed section 30-1-132's catchall phrase, "or otherwise rendering services in or in connection with any well," to apply only where the contract at issue pertains to activities "closely related to *well drilling*." *Reliance Ins. Co. v. Chevron U.S.A., Inc.*, 713 P.2d 766, 770 (Wyo. 1986) (emphasis added). In addition, since sections 30-1-131 and 30-1-132 restrict the freedom

---

(i) Death or bodily injury to persons . . .
(iii) Any other loss, damage, or expense arising under either (i) or (ii) from:
    (A) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or
    (B) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, *are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence. . . .*

WYO. STAT. ANN. § 30-1-131 (emphasis added).

to contract, we must strictly construe both statutes. *See id.* at 770 (citation omitted).

In this case, the Master Service Agreement pertains to a "well for oil, gas or water" and it purports to indemnify Devon against damages resulting from Devon's own negligence. Thus, it is invalid under Wyoming law if the operations performed by Neether and Hall on June 5, 2000, fall within the scope of activities described in section 30-1-132. If they do, the Master Service Agreement's indemnity provision is void under Wyoming law despite the parties' choice of law provision. If they do not, the parties' express choice of law provision is valid, and Oklahoma law will determine the enforceability of the indemnity provision.

Recently, in *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051 (Wyo. 2002), the Wyoming Supreme Court again considered the boundaries of section 30-1-132. As it had in the past, the court relied on *ejusdem generis*, the principle of statutory construction "whereby a general term following a list of specifically enumerated terms should be construed as limited to the same genus as the things enumerated." *Id.* at 1078 (citing *Reliance*, 713 P.2d at 770). Applying this principle to the catchall phrase "or otherwise rendering services in or in connection with any well," the court restricted the scope of section 30-1-132 to "services similar to 'drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, [or] plugging [wells].'" *Id.* (internal quotation omitted). Thus, to come within the ambit of section 30-1-132, the activity must be "'closely related to oil well *drilling*.'" *Id.* at 1077

(emphasis added) (quoting *Reliance*, 713 P.2d at 770). "'Services or activities having remote or indirect connection to the kinds of services enumerated' in [section 30-1-132] are not covered." *Id.* at 1075 (quoting *Reliance*, 713 P.2d at 770).

In *Gainsco*, the court reviewed its prior decisions defining the scope of section 30-1-132. The court set up as opposite points on a continuum the facts in two cases: *Cities Serv. Co. v. N. Prod. Co.*, 705 P.2d 321 (Wyo. 1985), and *Reliance*. In articulating the proper test, the court stated:

> The question, then, is whether the work being performed under the Contract [at the time of the incident in question] [is] more akin to the service of pumping units, as in *Cities Service Co.*, and therefore covered by the statute, or to the digging of fluid waste pits after a fire at a separation plant, as in *Reliance Ins. Co.*, and therefore not covered by the statute.

*Gainsco*, 53 P.3d at 1077. Applying this test, the court held that "delivering oil by truck to a tank battery is not an activity closely related to well drilling." *Id.*

Thus, under *Gainsco*, we must consider the services at issue in this case as they relate to the cases to which the Wyoming Supreme Court has directed us. In conducting our inquiry, we are mindful of the Wyoming Supreme Court's repeated admonition that section 30-1-132 must be construed narrowly because it restricts the common law right of freedom of contract. *See id.* at 1078; *Reliance*, 713 P.2d at 770.

In this case, the R&G employees were servicing a pump in Wolff CDP 12-6. The CDPs function to consolidate gas flow from numerous wells, meter the incoming gas for royalty calculation, and separate water from the gas before it enters the main pipeline.

While the CDP units contribute to well pressurization, which is essential to proper operation of the well, the closest gas well to Wolff CDP 12-6 was 600 feet away. Based on these considerations, the district court concluded that "the operations [Neether and Hall] performed at the CDP building [were] not sufficiently related to well drilling to fall within the application of the anti-indemnity statute." Dist. Ct. Order at 8. We agree.

R&G argues that activities performed at the CDP buildings are essential to the operation of the well and therefore fall within the scope of the statute because they are services "in or in connection with a well." It is true that a properly functioning CDP contributes to well pressurization, which is in turn essential to proper operation of the well. But R&G stretches the relationship too far. Beyond being essential to the proper functioning of the well, the cases require that the activity be "closely related to *well drilling*." *Reliance*, 713 P.2d at 770 (emphasis added). Thus, while we recognize that the coalbed methane wells in this case required CDPs to function, this does not bring the servicing of the CDPs within the scope of section 30-1-132.

The metering, consolidating, and separating functions, performed by the CDPs at considerable distance from the wells themselves, are distinguishable from the pumps involved in *Cities Service*. In fact, the separation function performed by the CDPs make this case similar to the facility in *Reliance* and the consolidating and metering functions are similar to the transportation function at issue in *Gainco*. Further, the Wyoming Supreme Court construes the "in connection" language as requiring a close connection to

well *drilling*; activities with a "*remote* or *indirect*" connection to the well itself are outside the statute's scope. *Gainsco*, 53 P.3d at 1075 (quoting *Reliance*, 713 P.2d at 770) (emphasis added). The CDPs are unquestionably remote. The nearest CDP is 600 feet from the well, and they may lie up to one mile away. The connection is also indirect, as up to a mile of four-inch pipelines and a "blow down" separate a well and a CDP.[3] Finally, we again note the Wyoming Supreme Court's instruction that we must strictly construe section 30-1-132.

R&G also argues that dictionary definitions of terms listed in the statute, such as "treating," "conditioning," and "altering," bring the functions performed by the CDP within the scope of section 30-1-132. As Devon notes, however, these terms have a specific meaning within the oil industry. Moreover, we are not writing on a blank slate; we are bound by the decisions of the Wyoming Supreme Court, which have (1) restricted the applicability of the statute to activities closely related to well *drilling*, and (2) provided a factual template for determining whether activities yet to be addressed are "closely related." It is for the legislature of Wyoming, not us, to extend the scope of the

---

[3]The Supreme Court of Wyoming has suggested, in dicta, that it does not consider sections 30-1-131 and 132 applicable to work on pipelines. *Northwinds of Wyoming, Inc., v. Phillips Petroleum Co.*, 779 P.2d 753, 757 n.5 (Wyo. 1989). The court in that case, however, held that the indemnity provision at issue was invalid because it did "not clearly state that Phillips [was] entitled to indemnity for its own negligence where it [had] been concurrently negligent." *Id*. at 756. The court's discussion of the applicability of the anti-indemnity statute to pipelines is therefore little help in this case, despite the similarity of the services at issue.

anti-indemnity statute beyond the boundaries set by Wyoming's highest court.

### III. CONCLUSION

Because the services Neether and Hall provided under the Master Service Agreement were not closely connected to well drilling, the indemnity provision in the Master Service Agreement does not offend Wyoming law or public policy. We therefore AFFIRM the district court's grant of summary judgment enforcing the Master Service Agreement's choice of law provision, which specifies Oklahoma law as governing the parties' dispute.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge