2004 WY 84

**PEDRO/ASPEN, LTD., a Wyoming Limited Partnership, Appellant (Plaintiff),**

v.

**BOARD OF COUNTY COMMISSIONERS FOR NATRONA COUNTY, Wyoming, a political subdivision of the State of Wyoming, Appellee (Defendant).**

No. 02–236.

Supreme Court of Wyoming.

July 16, 2004.

Representing Appellant: Richard W. Walden and Robert D. Singletary of Budd–Falen Law Offices, P.C., Cheyenne, Wyoming.

Representing Appellee: R. Michael Shickich, Casper, Wyoming and Eric A. Easton, Natrona County Attorney, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Pedro/Aspen, Ltd. (Pedro/Aspen) sought to subdivide land it had acquired through a contract for deed into parcels larger than thirty-five acres. The Natrona County Board of County Commissioners (Natrona County) required that Pedro/Aspen obtain approval for the subdivision pursuant to its zoning regulations. Contending Natrona County did not have the authority to regulate the division of land into parcels greater than thirty-five acres, Pedro/Aspen sought a declaratory judgment to that effect. The district court determined Pedro/Aspen did not have standing to maintain its action, but proceeded, upon stipulation of the parties, to determine Natrona County's zoning regulation for "major land subdivisions" was within the authority granted to counties by the legislature. We disagree with both conclusions and reverse.

## ISSUES

[¶ 2] Pedro/Aspen poses the following issues for our consideration:

A. Whether Pedro/Aspen, Ltd. has standing to bring a Declaratory Judgment Act claim challenging the validity of Chapter IX of the Natrona County Zoning Resolution ("NCZR").

B. Whether Chapter IX of the NCZR is a proper exercise of county zoning authority.

[¶ 3] Natrona County's view of the issues is quite similar:

A. Whether Natrona County has the authority to regulate the division of land pursuant to the exercise of its zoning authority.

B. Whether Pedro/Aspen has standing to seek judicial relief.

## FACTS

[¶ 4] Natrona County adopted a zoning resolution entitled "Major Land Subdivisions," which purports to require approval of any division of land into parcels that are between thirty-five acres and eighty-acres in size. On or about October 8, 1999, Pedro/Aspen entered into an agreement with Robinett Property Holdings, LLC for the sale of certain real property in Natrona County and recorded a document entitled "Notice of Execution of Agreement." Beginning November 9, 1999, Pedro/Aspen began selling individual forty-acre parcels and executing agreements entitled "Standard Agreement for Sale of Real Estate" with individual buyers. Simultaneously, Pedro/Aspen submitted the following letter, together with a major land division application, to the Natrona County Planning Department (Planning Department):

> Enclosed please find our application for a major land division.
>
> By way of background, we have been in business for over 30 years and have never been involved in a lawsuit with a government agency or with anyone who has ever purchased land from us. Our market is primarily people who wish to speculate on land or simply want to own a "piece of the West" and not necessarily for residential use.
>
> Since 1989 we have owned the Aspen Highlands subdivision west of Casper near Garfield Peak. One of our owners in this subdivision is Congresswoman Barbara [Cubin].
>
> Should you need any additional information, please feel free to contact me.

Natrona County began receiving calls from individuals requesting information as to what was necessary to construct residences on the property.

[¶ 5] The Planning Department reviewed the application and directed a report to the Chairman of the Natrona County Zoning and Planning Commissioners on January 25, 2000, recommending that the preliminary plat be approved subject to a list of sixteen contingencies. One of those contingencies was that the record title owner of the subject property, Robinett Property Holdings, LLC, also sign the application. Natrona County intended to consider the application on February 15, 2000, but the applicant asked that it be postponed until Natrona County's March 7, 2000, meeting. By letter dated February 22, 2000, the Planning Department notified the applicant that the Board had passed a resolution instituting a moratorium on major land divisions in Natrona County.[1]

[¶ 6] On March 3, 2000, Pedro/Aspen filed a complaint for declaratory and injunctive relief in the district court, contending that Chapter IX of the Natrona County Zoning Resolution (NCZR) was in direct contravention of Wyoming law and, therefore, ultra vires and of no force and effect. In addition, Pedro/Aspen asked that Natrona County be enjoined from enforcing Chapter IX. On June 16, 2000, Pedro/Aspen filed a motion for partial summary judgment on the issue of the validity of NCZR, Chapter IX. In its response, Natrona County contended Pedro/Aspen did not have standing to challenge the regulation and the statutes granted it ample authority to adopt the same. The parties stipulated that the district court could decide the motion for partial summary judgment based on the briefs and without oral argument. In a letter opinion dated March 4, 2002, the district court concluded Pedro/Aspen did not have standing to challenge the regulation because it was not the record owner of the property. However, it also found it was "appropriate to decide the issue on the merits." The court then declined to rule that NCZR, Ch. IX, was invalid and on April 23, 2002, it issued an order denying Pedro/Aspen's motion for partial summary judgment. Pedro/Aspen filed an amended complaint, alleging additional claims that Natrona County's actions constituted arbitrary and capricious agency action,

---

1. During oral argument, counsel for Pedro/Aspen stated that the application had been withdrawn.

inverse condemnation (which included Pedro/Aspen's assertion that Natrona County could not require that the owner of record of the lands in question also sign the land division application), an uncompensated taking, an unconstitutional condition (that being the requirement that the owner of record sign the application), inverse condemnation and an uncompensated taking (based on Natrona County's requirement that lots visible from U.S. Highway 20/26 could not be developed), and an unconstitutional condition (Natrona County's requirement that Pedro/Aspen construct county roads). Ultimately, the parties stipulated to dismissal of the additional claims in the amended complaint and to entry of judgment in favor of Natrona County on the issue of the validity of NCZR, Chapter IX.[2] The district court issued its judgment consistent with the stipulation. Pedro/Aspen timely appealed that judgment.

## STANDARD OF REVIEW

[¶ 7] This matter is before us for review of the district court's judgment as a matter of law. Where a judgment raises only issues of law, we review the matter *de novo* without affording any deference to the decision of the district court. *Union Pacific Resources Co. v. Dolenc,* 2004 WY 36, ¶ 4, 86 P.3d 1287, ¶ 4 (Wyo.2004); *Wadi Petroleum, Inc. v. Ultra Resources, Inc.,* 2003 WY 41, ¶ 10, 65 P.3d 703, ¶ 10 (Wyo.2003); *Mathewson v. City of Cheyenne,* 2003 WY 10, ¶ 4, 61 P.3d 1229, ¶ 4 (Wyo.2003); *Stoneking v. Wheatland Rural Electric Ass'n.,* 2003 WY 81, ¶ 9, 72 P.3d 272, ¶ 9 (Wyo.2003).

### 1. *Standing*

[¶ 8] On appeal, Natrona County reasserted its claim that Pedro/Aspen lacked standing to litigate the issue of the validity of NCZR, Chapter IX, under the Declaratory Judgments Act and we address that issue first. We have described the concept of standing in these terms:

Standing is a legal concept designed to determine whether a party is sufficiently affected to insure that the court is presented with a justiciable controversy.

*Jolley v. State Loan and Investment Board,* 2002 WY 7, ¶ 6, 38 P.3d 1073, ¶ 6 (Wyo.2002) (citations omitted).

The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in which the litigants have little or no interest in vigorously advocating. Accordingly, the doctrine of standing focuses upon whether a litigant is properly situated to assert an issue for judicial or quasi-judicial determination. A litigant is said to have standing when he has a "personal stake in the outcome of the controversy." This personal stake requirement has been described in Wyoming as a "tangible interest" at stake. The tangible interest requirement guarantees that a litigant is sufficiently interested in a case to present a justiciable controversy.

*Id.* (quoting *Roe v. Board of County Commissioners, Campbell County,* 997 P.2d 1021, 1022–23 (Wyo.2000)).

[¶ 9] We generally do not relax the standing requirement in the context of an action under the Uniform Declaratory Judgments Act, but require:

1. The parties must have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of

2. While the record does not contain the actual pleadings referenced in the stipulation, the recitations in the stipulation indicate Pedro/Aspen filed and withdrew a motion to dismiss counts two through ten (those added by the amended complaint) and a motion for certification pursuant to Rule 54(b), and that Natrona County had filed and withdrew a motion for summary judgment.

the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Department of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1168 (Wyo.1994) (citations omitted); *Riedel v. Anderson,* 2003 WY 70, ¶¶ 18–19, 70 P.3d 223, ¶¶ 18–19 (Wyo. 2003); *also see Cox v. City of Cheyenne,* 2003 WY 146, ¶ 10, 79 P.3d 500, ¶ 10 (Wyo.2003); *Director of the Office of State Lands & Investments v. Merbanco, Inc.,* 2003 WY 73, ¶¶ 12–14, 70 P.3d 241, ¶¶ 12–14 (Wyo.2003); *Sinclair Oil Corporation v. Wyoming Public Service Commission,* 2003 WY 22, ¶¶ 10–13, 63 P.3d 887, ¶¶ 10–13 (Wyo.2003); *Union Pacific Railroad v. Trona Valley Federal Credit Union,* 2002 WY 165, ¶¶ 8–10, 57 P.3d 1203, ¶¶ 8–10 (Wyo.2002); *Kroenlein v. Eddington,* 2001 WY 115, ¶ 11, 35 P.3d 1207, ¶ 11 (Wyo.2001); *In re Estate of Peters,* 2001 WY 71, ¶ 10, 29 P.3d 90, ¶ 10 (Wyo.2001); and *Hirschfield v. Board of County Commissioners of the County of Teton,* 944 P.2d 1139, 1142–43 (Wyo.1997).

[¶ 10] The fundamental question is whether the litigant has a "tangible interest" at stake in the controversy. In this matter, the controversy centers on the authority of Natrona County to regulate the subdivision of land into parcels greater than thirty-five acres. Pursuant to the authority granted by Wyo. Stat. Ann. § 18–5–201 et seq., (LexisNexis 2003), Natrona County adopted a zoning regulation providing no sales of land within a "major land subdivision" could occur until a plan, approved by Natrona County, was filed. A "major land division" is defined as "a division of land into three (3) or more lots or parcels 35 acres through 80 acres in size each, when the three or more divisions occur in a five-year period, and parts not immediately conveyed to others may remain in their present use for some time." Wyo. Stat. Ann. § 18–5–303(b) (LexisNexis 2003) grants counties the authority to regulate the subdivision of land, and provides, "[t]his arti-

cle shall not apply to the sale . . . of land where the parcels involved are thirty-five (35) acres or larger." Natrona County's regulation also applies to "the division of land into three (3) or more lots smaller than 35 acres when not otherwise covered by the Wyoming Subdivision Act. W.S. § 18–5–101, et seq." The regulation also requires that the owner of record of the property sign any application for a major land division.

[¶ 11] Pedro/Aspen began selling forty-acre parcels of land within Natrona County without first obtaining major subdivision plan approval from Natrona County. Although it filed an application for approval of its plan "in the spirit of cooperation," Pedro/Aspen ultimately asked the court to declare the zoning regulation invalid because it exceeded Natrona County's statutory authority to regulate the subdivision of land granted by Wyo. Stat. Ann. § 18–5–301 et seq. (LexisNexis 2003). In order to demonstrate that it had the requisite standing to pursue the declaratory judgment action, Pedro/Aspen had to establish it had a "tangible interest" at stake in the controversy over the validity of Natrona County's zoning regulation.

[¶ 12] Natrona County suggests two reasons why Pedro/Aspen lacks standing to challenge its zoning regulation. First, it claims that Pedro/Aspen is not the owner of record, only such owners may apply for a major land development permit, and therefore, since Pedro/Aspen cannot apply for a permit, it cannot challenge the validity of the regulation requiring the permit. Next, Natrona County argues Pedro/Aspen's equitable interest as a purchaser under a contract for deed is too speculative and does not qualify as a "tangible interest."

[¶ 13] Natrona County's claim that Pedro/Aspen did not have standing to challenge the regulation because it could not apply for a permit as an "owner of record" ignores the fact that without such a permit Pedro/Aspen could not exercise its rights to the property it had acquired under a contract for deed. Natrona County's position is analogous to arguing that a statute authorizing only men to obtain a driver's license could not be challenged by women because they

have no right to a license. Natrona County's regulation purported to prevent Pedro/Aspen from selling parcels of land that it acquired through a contract for deed. To conclude that a party who cannot comply with a regulation has no standing to challenge the legality of the regulation is nonsensical. If the claim is made that a regulation exceeds the county's statutory authority, a party whose tangible interest is affected by that regulation has standing to challenge it.

[¶ 14] Therefore, the focus of the standing analysis should be upon Natrona County's argument regarding the nature of Pedro/Aspen's interest in the property and whether it constitutes a sufficient "tangible interest" to provide standing to challenge a zoning regulation purporting to apply to the property. Throughout its argument, Natrona County hints that because Pedro/Aspen never produced the actual contract, perhaps that contract fails to create a sufficient interest to support standing. The evidence of Pedro/Aspen's interest in this matter consisted of the following:

1. A recorded document entitled "Notice of Execution of Agreement" which recited Pedro/Aspen had "entered into an Agreement for Sale of Real Property" with the record title owner of the property in question.

2. Pedro/Aspen's admission that it "purchased the property contained in the land division pursuant to a contract for deed." An admission in response to a request for admission "conclusively establishes" the fact pursuant to W.R.C.P. 36(b). *Orcutt v. Shober Investment, Inc.*, 2003 WY 60, 69 P.3d 386 (Wyo.2003).

3. Twenty-five individual contracts, entitled "Standard Agreement for Sale of Real Estate", filed in response to Natrona County's request for production of documents and represented to be "existing contracts in place." Each contract was executed by Pedro/Aspen and various individual purchasers and provided a sales price of $19,995 for a forty-acre parcel within the lands covered by the recorded "Notice of Execution of Agreement."

4. Verified Answer to Interrogatory No. 10 representing that Pedro/Aspen placed advertisements for sale of property in Wyoming in USA Today, the Wall Street Journal, and newspapers in seventeen states.

5. Various other documents demonstrating Pedro/Aspen's efforts to sell the forty-acre parcels in question.

6. Evidence that Pedro/Aspen was involved in several similar real estate sales projects in Wyoming, including Verified Answer to Interrogatory No. 7, which identified one involving 6,000 acres in Carbon County and another involving 3,000 acres in Natrona County, and that all of the parcels in these projects were sold to individual purchasers with many having been issued deeds.

7. An affidavit in which a Natrona County planner stated he had "personal knowledge" that Pedro/Aspen was selling individual forty-acre parcels of the property in question and had been contacted by persons who had purchased or were considering purchasing such parcels.

[¶ 15] All of this uncontested evidence demonstrated Pedro/Aspen had sufficient interest in the property to allow it to sell individual parcels, presumably for a profit, and had, in fact, made twenty-five such sales. Those sales resulted in the division of the land in question into parcels of approximately forty acres in size. Natrona County's regulation purported to prohibit the division of land into three or more parcels from thirty-five to eighty acres in size. Violation of that regulation subjected the responsible person to enforcement. Natrona County's actions indicated it intended to enforce its regulations and to impose conditions upon Pedro/Aspen, which would have required the expenditure of substantial money before the subdivision would be allowed. Irrespective of the absence from the record of the actual contract for deed between Pedro/Aspen and Robinett, the owner of record, we have no difficulty concluding the evidence demonstrated it created a sufficiently tangible interest to support standing.

[¶ 16] Natrona County also argues that even if the contract for deed created an equitable interest in the purchaser, that interest is too speculative and insufficient to

support standing. While we have found no cases directly on point, and Natrona County cited none, we note that in *Ford v. Board of County Commissioners of Converse County,* 924 P.2d 91 (Wyo.1996), an equitable owner, presumably a buyer under a contract for deed, successfully challenged a Converse County zoning regulation.

■ [¶ 17] As we stated in *Mayflower Restaurant Co. v. Griego,* 741 P.2d 1106, 1113 (Wyo.1987), "When property is sold under a valid contract and an escrow created, the purchaser under the contract is the equitable owner and assumes all the risk, including liability of ownership, while the seller holds legal title in trust for the purchaser as security for the performance of the contract." *See Withers v. Board of County Commissioners of the County of San Juan,* 96 N.M. 71, 628 P.2d 316 (N.M.App.1981); and *Cox v. Fowler,* 169 Okla. 355, 37 P.2d 291 (1934). We have held the vendor under a typical contract for deed has parted with title, possession, and control of the property. *Dubray v. Howshar,* 884 P.2d 23, 26 (Wyo.1994).

[¶ 18] The uncontested evidence proved Pedro/Aspen had a sufficient interest in the property to allow it to market, sell, and presumably realize profits from the forty-acre parcels in question. Unable to provide authority for its proposition that only the legal title holder would have standing to challenge the rule, Natrona County attempts to rely upon *In re Estate of Ventling,* 771 P.2d 388, 390 (Wyo.1989), which held that a judgment lien did not attach to the equitable interest of a buyer under a contract for deed. However, the rationale of that case was based upon statutory construction and did not suggest a buyer under a contract for deed would not have standing to challenge a zoning regulation restricting the use of the land in question. Likewise, neither did other cases upon which Natrona County relied. *Tri–State Nat'l Bank v. Saffren,* 726 P.2d 1081 (Wyo.1986) (which dealt with the equitable interest of a vendor, not a vendee, where the deed had actually been delivered); *In re Various Water Rights in Lake DeSmet Reservoir v. Texaco, Inc.,* 623 P.2d 764 (Wyo. 1981) (in which a mortgagee was found not to have standing to appeal an administrative decision regarding water rights related to the mortgaged property).

[¶ 19] Pedro/Aspen also meets the four part test required to pursue a declaratory judgment action as set forth in *Pacificorp,* 872 P.2d at 1168. As mentioned above, we generally do not relax the standing requirement in the context of an action under the Uniform Declaratory Judgments Act. *Id.*

[¶ 20] Having concluded Pedro/Aspen provided sufficient evidence of its interest in a contract for sale of the property allowing it to resell forty-acre parcels, and the direct impact of the zoning regulation upon that interest, we hold the first element (existing and genuine, not theoretical, rights or interest) of the four part test set out in *Pacificorp* was met. The uncontested evidence demonstrated sales and division of the property purportedly prohibited by the zoning regulation were occurring, and, in fact, those sales were the basis for Natrona County's claim of harm. Neither did any question exist that Natrona County intended to enforce its regulation. Pedro/Aspen's interest was not theoretical.

[¶ 21] With regard to the second element (judgment of the court may effectively operate), Natrona County was actively enforcing its regulations and requiring county approval before any land could be subdivided into parcels greater than 35 acres. Pedro/Aspen sought a declaratory judgment that "Chapter IX of the Zoning Resolution of Natrona County is ultra vires, unlawful and invalid in that it is in direct contravention of §§ 18–5–201 through 18–5–207 and § 18–5–303(a)(v) of the Wyoming Statutes." If the regulation were found to be unlawful, it would be unenforceable against anyone. Pedro/Aspen's claim clearly met the second element of the test.

[¶ 22] The third element (judicial determination will have the force and effect of a final judgment in law or in equity) is likewise met in this case. A judgment declaring the regulation invalid would prevent its enforcement and allow Pedro/Aspen to continue to sell property and thus, "have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real par-

ties in interest." *Pacificorp*, 872 P.2d at 1168.

[¶ 23] In an apparent effort to show the fourth element (proceedings are genuinely adversary) was not met, Natrona County suggests the matter was not truly adversary because Pedro/Aspen submitted an application in the "spirit of cooperation." However, that application was withdrawn and no doubt exists that the parties' positions were adverse. Pedro/Aspen's attempt to comply with the regulation does not prevent it from contending, in the alternative, that the regulation is invalid. No doubt existed that Natrona County's position that subdivision of parcels larger than 35 acres required approval was diametrically opposed to Pedro/Aspen's position that Natrona County had no authority to require such approval. The dispute was "genuinely adverse" and the fourth element of the test was met.

### 2. *Validity of Natrona County's "Major Land Subdivision" Regulation*

 Having concluded Pedro/Aspen had standing to challenge the regulations, we now address the merits of its claim regarding the authority of Natrona County to regulate the subdivision of land into parcels greater than thirty-five acres. To properly analyze the question of Natrona County's statutory authority to adopt the major land subdivision regulation, the difference between zoning and subdivision must be understood. The legislature granted Natrona County the authority to regulate the use of land pursuant to § 18–5–201 which provides, "[t]o promote the public health, safety, morals and general welfare of the county, each board of county commissioners may regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use and other purposes in the unincorporated area of the county." We have held the authority granted by this provision is broad. *Board of County Commissioners of Teton County v. Crow*, 2003 WY 40, 65 P.3d 720 (Wyo.2003). However, by express statutory language, this broad authority is limited to regulation of the *use* of land, not the division

of it into parcels. For example, the same planning and zoning statute specifies, in Wyo. Stat. Ann. § 18–5–203 (LexisNexis 2003), that it is unlawful to "locate, erect, construct, reconstruct, enlarge, change, maintain or use any building or use any land within any area included in a zoning resolution without first obtaining a zoning certificate from the board of county commissioners and no zoning certificate shall be issued unless the plans for the proposed building, structure or use fully comply with the zoning regulations then in effect." The clear import of this provision is, again, the regulation of the use of land, not its division into parcels. We have defined zoning as "the division of land into zones and within these zones the regulation of both the nature of land usage and the physical dimensions of these uses including height setbacks and minimum area." *Cheyenne Airport Bd. v. Rogers*, 707 P.2d 717, 726 (Wyo.1985). Natrona County has full authority to regulate the use of Pedro/Aspen's land pursuant to its zoning regulation.

 [¶ 25] However, the only authority granted to Natrona County by the legislature to regulate the *division* of land into parcels is § 18–5–301 et seq., the Real Estate Subdivisions Act. (e.g. "No person shall subdivide land ... without first obtaining a subdivision permit from the board of the county in which the land is located.") Wyo. Stat. Ann. § 18–5–304 (LexisNexis 2003). Counties have only those powers granted expressly by statute or necessarily implied in order to execute express powers. *Schoeller v. Bd. of County Commissioners of the County of Park*, 568 P.2d 869 (Wyo.1977). The specific terms of § 18–5–301 limit the authority it grants to counties. Section 18–5–303(b) states, "[t]his article shall not apply to the sale or other disposition of land where the parcels involved are thirty-five (35) acres or larger." Applying the plain meaning of the statute leads to the unavoidable conclusion that the legislature did not give counties the authority to require county approval for subdivision of land into parcels greater than thirty-five acres.

 [¶ 26] Natrona County attempted to avoid this interpretation by pointing to

Wyo. Stat. Ann. § 18–5–315 (LexisNexis 2003) and suggesting that provision gave it authority to impose more stringent regulations, thus authorizing county regulation of subdivision of land into parcels larger than thirty-five acres. That section provides, "[i]f any board has or enacts resolutions or regulations which impose requirements on subdividers or subdivisions which are more restrictive than the provisions of this article, the authority to enact such local resolutions or regulations being hereby granted, the local provisions are not superseded by the provisions of this article." *Id.*

[¶ 27] Two problems exist with Natrona County's reasoning. First, reading the language of § 18–5–315 carefully, the legislature clearly authorized counties to impose more restrictive standards on subdivisions, but did not authorize them to change the explicit exemption of subdivisions in which the parcels are greater than thirty-five acres. Second, if Natrona County's interpretations were correct, the definition of "subdivision", as well as the list of ten exemptions, would become meaningless, a result not likely intended by the legislature. In interpreting statutes, we give effect to every word, clause and sentence, and construe them in pari materia. *Rawlinson v. Greer*, 2003 WY 28, 64 P.3d 120 (Wyo.2003). We avoid construing a statute so as to render a portion of it meaningless. *Wyodak Resources Development Corp. v. Department of Revenue*, 2002 WY 181, 60 P.3d 129 (Wyo.2002). Reading § 18–5–315 as Natrona County does renders the statutory exemptions meaningless.

[¶ 28] Two Attorney General opinions, spanning twenty years, agreed with the conclusion that counties have no authority to require approval of subdivisions involving parcels greater than thirty-five acres. 79 Op. Atty. Gen 35 (Dec. 18, 1979); 99 Op. Atty. Gen. 2 (June 22, 1999). Likewise, courts in other jurisdictions, when presented with similar issues, have reached the same conclusion. In *State ex rel. Swart v. Casne*, 172 Mont. 302, 564 P.2d 983 (1977), the court rejected a state agency's effort to regulate a division of property which was exempt from that state's subdivision act, stating,

They engraft additional and contradictory requirements on the statute in the guise of defining and implementing the evasion of statutory requirements. They frustrate the purpose of the "occasional sale" exemption of the Act. As such, the DCA regulations are void on their face.

*Id.* at 986.

[¶ 29] The court went on to address the agency's argument that it had been given statutory authority to prescribe standards.

Where, as here, the Act provides for exemption of occasional sales from the subdivision requirements, DCA cannot prescribe subdivision regulations eliminating the exemption.... An administrative agency is not a "super legislature" empowered to change statutory law under the cloak of an assumed delegated power.

*Id. See also Arundel v. Swain*, 374 A.2d 317 (Me.1977) (town was without power to change statutory definitions); *Stoker v. Irvington*, 71 N.J.Super. 370, 177 A.2d 61 (1961) (town was without power to add to or delete from statutory exceptions); and *Manalapan Builders Alliance, Inc. v. Township Committee of the Township of Manalapan*, 256 N.J.Super. 295, 606 A.2d 1132 (1992) (adoption of township zoning ordinance which deviated from statutory definitions was ultra vires and beyond power of township).

[¶ 30] Natrona County argued passionately about the evils of subdivisions such as Pedro/Aspen's, including the potential for inadequate roads, utilities, and other infrastructure. It also cited incompatibility of these subdivisions with the Natrona County land use plan. We have no doubt the problems raised by Natrona County do, in fact, exist. However, the fact that Natrona County has no authority to prevent the subdivision of land beyond that granted by the statute does not render it defenseless against the problems it perceives with subdivisions having parcels larger than 35–acres. Natrona County retains full authority through its zoning powers to regulate the use of those lands by establishing approved uses in certain zones and standards for activities such as building, road construction and sewage disposal. Although we appreciate Natrona County's concern that dealing with many in-

dividual owners is more difficult than handling these issues before the land is subdivided, the manner in which these concerns can be addressed by local governments is the business of the legislature. It is not the job of the courts to grant such powers specifically withheld by the legislative branch.

## CONCLUSION

[¶ 31] We hold Pedro/Aspen had standing to challenge the validity of Chapter IX of Natrona County's Zoning Resolution and that resolution exceeds Natrona County's statutory authority to regulate the subdivision of land. The judgment of the district court is reversed and the matter is remanded for proceedings consistent with this opinion.