# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 145

OCTOBER TERM, A.D. 2022

November 15, 2022

BIG AL'S TOWING AND RECOVERY,

Appellant
(Respondent),

v.

STATE OF WYOMING, DEPARTMENT OF
REVENUE,

Appellee
(Petitioner).

S-22-0074

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

*Representing Appellant:*
    James O. Bardwell, Christopher M. Brennan, and Gay Woodhouse, Woodhouse Roden Ames & Brennan, LLC, Cheyenne, Wyoming. Argument by Mr. Brennan.

*Representing Appellee:*
    Bridget L. Hill, Attorney General; Brandi Lee Monger, Deputy Attorney General; Karl D. Anderson, Senior Assistant Attorney General; Douglas Brodbeck, Assistant Attorney General. Argument by Mr. Brodbeck.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   Wyo. Stat. Ann. § 39-15-103(a)(i)(J) (LexisNexis 2021) levies an excise tax on "[t]he sales price paid for services performed for the repair, alteration or improvement of tangible personal property[.]"   This appeal concerns whether three roadside services offered by Big Al's Towing and Recovery (Big Al's)—jump-starting a vehicle, unlocking a vehicle, and replacing a flat tire with the spare tire—are taxable under that statute. Interpreting the statutory language de novo and applying it to the undisputed facts, we affirm the Wyoming Board of Equalization's (Board's) decision that the roadside services are not taxable under § 39-15-103(a)(i)(J), and reverse the district court's decision to the contrary.

### *ISSUE*

[¶2]   We rephrase the issue:

> Is the Board's decision that Big Al's roadside services are not taxable under Wyo. Stat. Ann. § 39-15-103(a)(i)(J) in accordance with law?

### *FACTS*

[¶3]   The undisputed evidence presented to the Board reflects the following.  Big Al's provides towing services, sells car batteries, and provides roadside services to drivers in Wyoming.  Much of its work is obtained through contracts with motor clubs such as the American Automobile Association (AAA).  Pursuant to its contract with AAA, for example, AAA pays Big Al's $60 per call for jump-starting a vehicle, unlocking a vehicle, and replacing a flat tire with the spare tire.  Big Al's has never collected sales tax on these roadside services.

[¶4]   Following an audit, the Wyoming Department of Revenue (DOR) determined Big Al's owed taxes and interest on roadside assistance revenue it collected from October 2016 to September 2019.  Big Al's appealed the approximate $12,000 tax and interest assessment to the Board.

[¶5]   The Board held a contested case hearing where two witnesses testified: Terri Lucero, the Administrator of the DOR Excise Tax Division, and Big Al's owner, David Rose.  The Board admitted a handful of documents related to the audit, as well as prior guidance the DOR provided towing companies about services it considered taxable under § 39-15-103(a)(i)(J).[1]

---

[1] In 2009, the Excise Tax Division issued a newsletter addressing "some confusion on the taxability of services towing companies may perform."  The newsletter stated: "If the towing company performs repairs

1

[¶6]    Mr. Rose and Ms. Lucero described the roadside services and opined whether they qualified as repairs, alterations, or improvements.  Beginning with Big Al's jump-start service, Mr. Rose testified there were various reasons why a driver might need their vehicle jump-started.

> A. . . . [M]aybe the dome light has been left on or a door's ajar and the little lights -- courtesy lights stay on.
>
> Q. So there was a load on the battery that ran the battery out of electricity?
>
> A. Or heat and cold really affect the batteries, if it's a cold day, it will run 20 or 30 jump starts.  If it's a hot day in the middle of summer, those cause batteries to fail also.  Batteries are only good for three to five years in this climate, and, you know, by eight years they're done.  And they don't just go out a little at a time.  It's like all the sudden, your vehicle don't start.

To start the vehicle, Big Al's used a different battery to "conduct[] electricity into the ignition."  Big Al's did not fix any underlying problem with the battery.  The jump-start allowed the driver to "continue on their way."

[¶7]    Turning to Big Al's lockout service, Mr. Rose and Ms. Lucero testified there were several reasons a driver might need their vehicle unlocked: they accidentally locked their keys in the car, their key fob stopped working, or the lock malfunctioned.  According to Mr. Rose, Big Al's "manipulate[d] the car" to unlock it.  According to Ms. Lucero, Big Al's used a tool to open the car or "push[ed] the window away" to reach the lock mechanism.  Unlocking the car allowed the driver to access the inside of the vehicle.  If there was an underlying problem with the lock, Big Al's did not fix it.

[¶8]    Finally, Big Al's tire service consisted of replacing the vehicle's flat tire with the vehicle's spare tire. Mr. Rose noted "[a] lot of times people don't know how to change the tire.  They're physically incapable, or maybe they're on their way to something fancy, they're dressed up, so they use their roadside assistance off their AAA."  He confirmed driving on a flat tire could damage the rims or suspension.  Putting the spare tire on the vehicle allowed the driver to go home or to a repair shop for a new tire.

---

on the vehicle, the repairs are taxable.  These repairs/services could include jump starting a vehicle, changing a tire, and or replacing a headlight."  In 2017, the DOR issued a tax bulletin once again addressing "confusion with regard to towing services[.]"  The tax bulletin stated: "Services which repair, alter, and/or improve tangible personal property are subject to sales tax.  For example, jump starts, lock outs, tire changes, adding water to a radiator, etc., are all taxable services."

[¶9]     In Mr. Rose's opinion, none of the roadside services repaired, altered, or improved a vehicle; they did not make a vehicle more valuable; and there was no tangible difference in a vehicle after the tire change service.  Ms. Lucero conceded none of the services repaired a vehicle, but maintained they all altered and improved a vehicle.  She opined that unlocking a vehicle is an alteration "because that vehicle is now unlocked and the owner can now access the vehicle"; jump-starting a vehicle "alter[s] the vehicle from a vehicle that didn't start to a vehicle that did"; and changing a tire is an alteration "because the inflated tire is now on that vehicle, and the vehicle driver can now drive it."  Ms. Lucero further opined that jump-starting a car improves the quality and value of the vehicle by allowing it to start.  Big Al's lockout service improves the vehicle "because a person can now get in their vehicle because it's unlocked, and they couldn't unlock it themselves."  And Big Al's tire change service improves the vehicle by allowing it to be driven.

[¶10]   In its decision, the Board found § 39-15-103(a)(i)(J) unambiguous and, because the legislature did not define "alter" or "improve," it examined common definitions of those words to determine their meaning.  The Board concluded, in relevant part, that "alter" means "to make different without changing into something else[.]"  And "an increase in value is a hallmark of improvement; otherwise, 'improvement' would merely mean any change for the better, which is just a subset of 'alteration.'"

[¶11]   In reversing the DOR's decision, the Board concluded none of those terms, as commonly defined, applied to the roadside services.

> Neither the language of the statute, nor the [DOR's] rules promulgated to enforce the statute, can stretch as far as the [DOR] wants them to.  We believe the [DOR's] interpretations of "alteration" and "improvement" run afoul of the judicial injunction against expanding statutes "beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out."  []
>
> In short, we have dueling opinion testimony from Mr. Rose, an expert on automobiles, and Ms. Lucero, an expert on taxation.  At best for the [DOR], it's a draw.  As such, the [DOR] didn't bear its burden of proof by a preponderance of the evidence.  We believe the [DOR] simply asks too much of the words "alteration" and "improvement," as evidenced by Ms. Lucero's testimony that there is an alteration every time someone starts a car.  []

3

Thus, in applying its plain language interpretation of § 39-15-103(a)(i)(J) to reverse the DOR's decision, the Board also recognized that the DOR has the ultimate burden to show the roadside services at issue constitute a taxable event.[2]

[¶12]   The district court agreed with the Board that the statute is unambiguous.  However, it adopted the DOR's preferred definitions of "alter" and "improvement" and, like the DOR, concluded those terms describe, or apply, to Big Al's roadside services.

> This court concludes Big Al's roadside services . . . , as the services were described by Mr. Rose, make the vehicles different without changing the vehicles into something else and make the vehicles better.  In other words, each of the disputed services alters and/or improves the vehicle.

Accordingly, the district court held the roadside services are taxable under Wyo. Stat. Ann. § 39-15-103(a)(i)(J).  Big Al's timely appealed.

### STANDARD OF REVIEW

[¶13]   We review the Board's decision pursuant to the Wyoming Administrative Procedure Act, affording no deference to the district court's decision.  Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2021); *Solvay Chemicals, Inc. v. Wyo. Dep't of Revenue*, 2022 WY 122, ¶ 7, 517 P.3d 1123, 1127 (Wyo. 2022) (citations omitted).  Ordinarily, we would review the Board's findings of fact for substantial evidence.  *Solvay*, ¶ 7, 517 P.3d at 1127 (citation omitted).  In this case, however, the facts are not disputed.  Instead, the parties dispute whether the Board applied the statute to the undisputed facts in accordance with law.  "We review an agency's conclusions of law *de novo* and affirm when they are in accordance with the law." *Id.* (citation omitted).  *See also* Wyo. Stat. Ann. § 16-3-114(c)(ii)(A) ("The reviewing court shall . . . [h]old unlawful and set aside agency action, findings and conclusions found to be . . . [a]rbitrary, capricious, an abuse of discretion *or otherwise not in accordance with law*[.]") (emphasis added); *Delcon Partners LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 7, 450 P.3d 682, 684 (Wyo. 2019) ("Statutory interpretation is a question of law subject to de novo review." (citation omitted)).

---

[2] The issue here is whether the roadside services constitute a taxable event, not whether Big Al's is entitled to a tax exemption.  *See, e.g.*, *Dep't of Revenue v. Bd. of Cnty. Commissioners of Johnson Cnty.*, 2019 WY 7, ¶¶ 5–6, 432 P.3d 920, 922 (Wyo. 2019) (explaining that when the question is whether a tax exemption applies, the burden is on the one claiming the exemption because "[t]here is a presumption created against granting exception and in favor of taxation"; however, when the question is whether there is a taxable event, the DOR has the ultimate burden of persuasion).

4

## DISCUSSION

[¶14]   To determine whether the Board's decision that the roadside services do not alter or improve a vehicle is in accordance with law, we must interpret Wyo. Stat. Ann. § 39-15-103(a)(i)(J).  As noted above, the statute levies an excise tax on "[t]he sales price paid for services performed for the repair, alteration or improvement of tangible personal property[.]"  Wyo. Stat. Ann. § 39-15-103(a)(i)(J).  No one disputes the roadside services are, in fact, services; the services do not constitute repairs; and vehicles are tangible personal property.  *See* Wyo. Stat. Ann. § 39-15-101(a)(ix) (LexisNexis 2021) (defining "[t]angible personal property" as "all personal property that can be seen, weighed, measured, felt or touched, or that is in any other manner perceptible to the senses").  Consequently, we, like the Board and district court, focus our attention on the undefined statutory terms "alteration" and "improvement."

[¶15]   "When interpreting statutes, this Court searches for the legislature's intent as reflected in the language of the statute."  *Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue*, 2017 WY 6, ¶ 25, 387 P.3d 725, 732 (Wyo. 2017) (citing *Vance v. City of Laramie*, 2016 WY 106, ¶ 12, 382 P.3d 1104, 1106 (Wyo. 2016)).  "Our first task is to determine, as a matter of law, whether the statute is clear or ambiguous."  *Id.* (citing *Lance Oil & Gas Co. v. Dep't of Revenue*, 2004 WY 156, ¶ 4, 101 P.3d 899, 901 (Wyo. 2004)).

> "We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous.  A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability.  Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations."

*Id.* (quoting *RME Petroleum Co. v. Dep't of Revenue*, 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo. 2007)).  "[T]hat the parties have differing opinions on the statute's meaning is not conclusive as to ambiguity."  *Id.* (citing *Bd. of Cnty. Comm'rs of Sublette Cnty. v. Exxon Mobil Corp.*, 2002 WY 151, ¶ 24, 55 P.3d 714, 721 (Wyo. 2002)).

[¶16]   "If the statutory language is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning."  *Id.* ¶ 26, 150 P.3d at 732 (quoting *DB v. State (In re CRA)*, 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016)).  "We give effect to each word, clause and sentence chosen by the legislature, and construe them *in pari materia*."  *Id.* (citing *Pedro/Aspen, Ltd. v. Bd. of Cnty. Comm'rs*, 2004 WY 84, ¶ 27, 94 P.3d 412, 420 (Wyo. 2004)).  "A statute is not interpreted in a way that renders a portion of it meaningless or adds language to it."  *Id.* (citing *Pedro/Aspen, Ltd.*, ¶ 27, 94 P.3d at 420).

[¶17]  We agree with all concerned that the statute is unambiguous.  It makes plain that services performed for the alteration or improvement of vehicles are subject to excise tax. Because the words alteration and improvement are not defined by statute or DOR rule, we look to their common dictionary definitions.  *See* Wyo. Stat. Ann. § 39-15-101 (definitions); Wyo. Stat. Ann. § 8-1-103(a)(i) (LexisNexis 2021) ("The construction of all statutes of this state shall be by the following rules, unless that construction is plainly contrary to the intent of the legislature: (i) Words and phrases shall be taken in their ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import[.]"); *Wyodak*, ¶ 31, 387 P.3d at 733 (looking to the common dictionary definitions of the word "pit" in the mining context where that term was not defined by statute or DOR rules); *Painter v. Hallingbye*, 2021 WY 78, ¶ 19, 489 P.3d 684, 691 (Wyo. 2021) ("When a term is not defined in a statute, this Court will furnish an ordinary and obvious meaning." (citation omitted)); *In re Est. of Meyer*, 2016 WY 6, ¶ 34, 367 P.3d 629, 639–40 (Wyo. 2016) ("In the absence of a statutory definition, this Court infers that the legislature intended no special meaning for the word but, instead, intended that it be given its ordinary meaning— its common dictionary definition." (citation omitted)).

### Alteration

[¶18]  The common dictionary definition of "alteration" is "the act or process of altering something[.]"  *Alteration*, Merriam-Webster, https://www.merriam-webster.com/dictionary/alteration (last visited Oct. 31, 2022); *see also Merriam-Webster's Collegiate Dictionary* 35 (11th ed. 2012) ("the act or process of altering: the state of being altered" or "the result of altering").  In turn, "alter" means "to make different without changing into something else[.]"  *Alter*, Merriam-Webster, https://www.merriam-webster.com/dictionary/alter (last visited Oct. 31, 2022); *see also The Merriam-Webster Dictionary* 15 (2005) ("to make or become different"); *Merriam-Webster's Collegiate Dictionary* 35 (11th ed. 2012) ("to make different without changing into something else").

[¶19]  The parties agree the word alter means "to make different without changing into something else."  They disagree on the degree of change necessary for an alteration.  Big Al's contends the change must be more than *de minimis*, and permanent, not temporary. The DOR maintains any change, no matter how small or temporary, is enough.

[¶20]  Notably, neither party defines the word "different."  "Different" means "partly or totally unlike in nature, form, or quality[.]"  *Different*, Merriam-Webster, https://www.merriam-webster.com/dictionary/different (last visited Oct. 31, 2022); *see also The Merriam-Webster Dictionary* 137 (2005) ("unlike in nature or quality").  In other words, the altered vehicle no longer resembles the unaltered vehicle.  Thus, without adding words to the statute, we can readily conclude the legislature did not intend an "alteration" to be either temporary or *de minimis*.

**Improvement**

[¶21] Turning to the word "improvement," the parties primarily disagree whether an improvement requires an increase in the value of the property. Big Al's contends it does, noting the Board's determination that "an increase in value is a hallmark of improvement; otherwise, 'improvement' would merely mean any change for the better, which is just a subset of 'alteration.'" The DOR counters that "[i]ncreasing the quality and making something better is enough to satisfy the definition of 'improve[.]'" We conclude that to constitute an "improvement" under § 39-15-103(a)(i)(J) the legislature intended a roadside service do more than restore drivability. To "improve" the vehicle, the service must increase its value.

[¶22] Across dictionaries, the word "improvement" is defined to reflect an increase in value.

- "[T]he act or process of improving"; "the state of being improved *especially*: enhanced value or excellence"; and "an instance of such improvement: something that enhances value or excellence[.]" *Improvement*, Merriam-Webster, https://www.merriam-webster.com/dictionary/improvement (last visited Oct. 31, 2022).

- "[T]he act or process of improving"; "increased value or excellence of something"; "something that adds to the value or appearance of a thing[.]" *The Merriam-Webster Dictionary* 247 (2005).

- "An addition to property, usu. real estate, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." *Improvement*, Black's Law Dictionary (11th ed. 2019).

[¶23] The term "improve" is similarly defined to include an increase in value.

- "[T]o enhance in value or quality: make better"; "to increase the value of (land or property) by making it more useful for humans[.]" *Improve*, Merriam-Webster, https://www.merriam-webster.com/dictionary/improve (last visited Oct. 31, 2022).

- "[T]o enhance or increase in value or quality." *The Merriam-Webster Dictionary* 247 (2005).

7

- "To increase the value or enhance the appearance of (something)." *Improve*, Black's Law Dictionary (11th ed. 2019).

- "[T]o make better; to enhance in value or good qualities." *Improve*, *Webster's New Twentieth Century Dictionary* (2d. 1979).[3]

Such repeated reference to increase in value supports our conclusion that the legislature intended to incorporate value in its use of "improvement" in § 39-15-103(a)(i)(J).

[¶24]  Our conclusion is further supported when we consider the word "improvement" *in pari materia* with other words the legislature used in § 39-15-103(a)(i)(J).  The statute plainly refers to repairs, alterations, and improvements.  If the legislature uses two or more words to describe taxable events we presume it intended that each word mean something different.  *See Laramie Cnty. Sch. Dist. No. One ex rel. Bd. of Trustees of Laramie Cnty. Sch. Dist. No. One v. Kinstler*, 2015 WY 143, ¶ 14, 361 P.3d 819, 822 (Wyo. 2015) (noting the rule that "when different words are used in the same or a related statute, they are usually intended to have different meanings" (citation omitted)); 2A *Sutherland Statutory Construction* § 46:6 (7th ed.), Westlaw (Nov. 2021 Update) ("Different words used in the same, or a similar, statute are assigned different meanings whenever possible." (footnote omitted)).  If, as the DOR contends, an improvement need only make something better or increase its quality, we can glean no meaningful difference between an "alteration" and an "improvement," thus rendering one of the terms superfluous.  To the contrary, we must afford "[e]ach word of a statute . . . meaning, with none rendered superfluous," *Union Pac. Res. Co. v. Dolenc*, 2004 WY 36, ¶ 13, 86 P.3d 1287, 1292 (Wyo. 2004) (citation omitted), and "strive to avoid an interpretation that . . . renders a portion of the statute meaningless," *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014) (citation omitted).

[¶25]  For the foregoing reasons, we agree with the Board that the legislature intended a "service[] performed for the . . . improvement of tangible personal property" to be taxable only if it increases the value of the property subject to the service.

### Application

[¶26]  Applying the plain and ordinary meanings of "alteration" and "improvement" as used in Wyo. Stat. Ann. § 39-15-103(a)(i)(J), we conclude none of Big Al's roadside services alter or improve a vehicle.

---

[3] The DOR directs our attention to this 1979 dictionary definition, asserting we ought to afford the words in the statute their meaning at the time when the statute was first enacted in 1977.  But the DOR acknowledges current dictionaries define the relevant words similarly.

[¶27] When Big Al's jump-starts a vehicle, the battery receives enough electricity from an outside source to allow the engine to start. Other than its ability to start that one time there is nothing "different" about the vehicle. It has all the same parts—no part has been replaced. The vehicle is not "partly or totally unlike [its former self] in nature, form, or quality" simply by virtue of receiving an electric charge. Moreover, its ability to start may well be temporary. And, as Mr. Rose testified, the value of the vehicle has not increased. The jump-start service neither alters nor improves the vehicle.

[¶28] Big Al's lockout service consists of disengaging the locking mechanism, thus allowing the driver to access the inside of the vehicle. Big Al's does not replace any vehicle part. At the end of the lockout service, the vehicle's doors, windows, locking mechanism, and key or key fob all remain the same. The vehicle is not "partly or totally unlike [its former self] in nature, form, or quality." It is very much the same except the locking mechanism has been disengaged. Moreover, Big Al's does not increase the value of the vehicle simply by unlocking it any more than a driver increases the value of the vehicle each time he unlocks it. The unlocking service neither alters nor improves the vehicle.

[¶29] Big Al's tire change service consists of removing the flat tire and replacing it with the vehicle's spare tire. Big Al's makes no attempt to repair the flat tire. Prior to the service, the vehicle had four functioning tires and one flat tire. The same is true when the service is complete. The only difference is the location of two of those tires—the flat tire has been swapped for the spare. The vehicle is not "partly or totally unlike [its former self] in nature, form, or quality." Big Al's has not, as Mr. Rose testified, increased the value of the vehicle. The tire change service neither alters nor improves the vehicle.

[¶30] Applying its preferred definitions, without adopting those definitions following public notice and comment through the rule-making process,[4] the DOR concludes that each

_____

[4] The DOR's rule on § 39-15-103(a)(i)(J) merely parrots the statutory language:

> (dd) Repairs, Alterations and Improvements. Labor or service charges for the repair, alteration or improvement of tangible personal property, as well as charges for the materials, supplies and fabrication used in rendering services shall be subject to the sales tax. The purchase of materials, supplies and fabrication which become an ingredient of the repair, alteration or improvement of tangible personal property shall be considered wholesale sales. Labor or service charges for repairs, alterations or improvements of real property are not subject to the sales tax.

DOR Rules, Ch. 2, § 13(dd). The DOR suggests we should defer to its construction of this rule in our interpretation of § 39-15-103(a)(i)(J). However, because the rule offers no interpretation of the salient terms, the DOR's application of the statutory terms to Big Al's roadside services is not entitled to judicial deference. *Cf. Gonzales v. Oregon*, 546 U.S. 243, 257, 126 S.Ct. 904, 916, 163 L.Ed.2d 748 (2006) ("Simply put, the existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute. An agency does not acquire special authority

9

vehicle subject to one of Big Al's roadside services is altered and improved because it goes "from an immovable metal object" to an operable vehicle. Under this interpretation, virtually any service performed on a vehicle would be subject to excise tax, no matter how small or temporary the change.

[¶31]   The DOR's interpretation of Wyo. Stat. Ann. § 39-15-103(a)(i)(J) is inconsistent with the statute's plain language and conflicts with fundamental principles of taxation. The Wyoming Constitution requires that "every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." Wyo. Const. art. 15, § 13. And we have stated that "[s]tatutes levying taxes should not be extended, by implication, beyond the clear import of the language used, or their operations enlarged to embrace matters not specifically addressed." *RME Petroleum Co.*, ¶ 48, 150 P.3d at 690 (citing *Amoco Prod. Co. v. Dep't of Revenue*, 2004 WY 89, ¶ 18, 94 P.3d 430, 438 (Wyo. 2004)). *See also Qwest Corp. v. State ex rel. Wyo. Dep't of Revenue*, 2006 WY 35, ¶ 9, 130 P.3d 507, 511 (Wyo. 2006) ("[T]axes may not be imposed by any means other than a clear, definite and unambiguous statement of legislative authority."). "[T]he legislature is well acquainted with the need to draw its tax statutes carefully and with precision." *RME*, ¶ 48, 94 P.3d at 690. If the legislature had intended to impose an excise tax on all services performed on a vehicle, "we would expect to see that intent reflected in the language of the statute." *See id.* The plain language of § 39-15-103(a)(i)(J) does not reflect such broad intent.

## *CONCLUSION*

[¶32]   As the DOR expressly recognizes, "Wyoming does not impose excise tax on most services." That includes Big Al's three roadside services. The Board's decision that Big Al's roadside services of jump-starting a vehicle, unlocking a vehicle, and replacing a flat tire with the spare tire are not taxable under Wyo. Stat. Ann. § 39-15-103(a)(i)(J) is in accordance with law. We therefore affirm the Board's decision and reverse the district court's decision.

---

to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.").